Good morning, Your Honor. May it please the Court, Assistant Federal Defender Lee Tucker appearing for Mateo Juan-Diego. I will reserve two minutes for rebuttal, and I will keep an eye on the clock. Your Honors, contrary to the government's assertion at page 26 of the answering brief, there is no inconsistency or lack of clarity in this circuit's jurisprudence on the issue before us regarding the elements required for a conviction under 8 U.S.C. 1326. Excuse me. And there has been no confusion since 2006 when this Court in U.S. v. Salazar-Gonzalez clarified and emphasized that Section 1326 requires proof beyond a reasonable doubt, both of a voluntary entry, the actus reus, and of the knowing mens rea, rea, that the person is aware that they are in the United States, that they have entered the United States, or if they're later found in, that they are aware and are staying there, knowing that they are there. Sotomayor One of the questions he was asked during the plea colloquy is whether he admitted that you return to the United States without authorization. Yes. Yes. How do you return to the United States if you think you're in Mexico? Well, the issue, Your Honor, is not — clearly, once he was arrested and taken into custody, he knew he was in the United States. The circuit has recognized the possibility of an inadvertent entrance, an unknowing entrance, and that could have been the case here. And again, the issue we really need to focus on is, had he been properly advised, might he have decided to exercise his Sixth Amendment trial right? We review this through plain error. Yes, Your Honor. And so we get to look more broadly at the record, and it's not with the same scrutiny that we would do if this had been raised, you know, on direct appeal. And so looking at the complete facts, what's said in the transcript and his interaction with the officer, it seems hard to find any basis to be worried about whether he thought he was in the United States. Well, and just to clarify, we are on plain error review. We are on this direct appeal from the district court. It is plain error review. Yes, so it's clear that there was error, and it was plain. The issue is, then does it involve the substantial prejudice to Mr. Juan Diego that would require that his conviction be vacated? And again, I want to go back to focusing on the issue, and as the Supreme Court instructed in Dominguez Benitez, it doesn't matter if the choice to go to trial might have been, I believe the language is, a foolish choice. The issue is whether or not knowing the elements might have made a difference to the defendant's calculation and strategic decision to plead guilty versus go to trial. Counsel, as a district judge, one of the things that troubles me about this case, and you may be right, and we may be reversing here, is that defense counsel hearing this colloquy could have stepped right in and said, Your Honor, I don't believe you've covered this and this. Couldn't that have occurred here? That could have occurred here, Your Honor. And I think that underscores the necessity for the court to rule in this case and rule in Mr. Juan Diego's favor, because although the law has been clear since 2006 that both elements are required, there is no requirement that it be alleged in the indictment. And I think that there is the practice of inquiring as to this element has not been firmly implemented. But absolutely, had defense counsel been thinking about this, they could have stepped in. And it could have been easily remedied, because the district court could have specifically asked the question. And so that's why it's difficult to say that there's plain error in this case, because the district court was not given the opportunity to remedy the asserted violation. Well, yes, Judge Rawlinson, but also that's not really the standard that we need to look at here, because the issue isn't could the district court – right, we're on plain error. So we already are on our back foot as we come forward with this issue. But the issue is – so understand we're on plain error. The issue is had he been informed, might that have made a difference? And here we have someone who came and it was dark. There's discrepancies in the record as to where he was when he was arrested, but we know it was dark and it was in the desert in the border area. So your argument is that we should assume that he didn't know he was in the United States? No, Your Honor. Thank you. My argument is we don't need to question that. That would be for the jury. What we need to consider is if he'd known this, might he have decided to exercise his constitutional right to trial and have a jury decide? And here we have that – Had he known what? Had he known that the government would have to prove to a jury, beyond a reasonable doubt, that he knew he was in the United States when he was arrested. And we have a very confused – excuse me, a very – Do we have anything in the record that would support a conclusion that had he known that the government had to prove that he was aware he was in the United States, he would have gone to trial? What is there in the record to support that? We don't need to convince the Court that he would have gone to trial. And we – But doesn't there have to be some indication in the record of that?  And what is the indication in the record? Because oftentimes –  We have a declaration from the defendant if he pleads guilty and he says, I would not have pled guilty if my counsel had told me this. I would not have pled guilty if I had known that. Do we have anything like that in the record? Well, Your Honor, if we end up not prevailing on direct appeal and return on a 2255, we may have that. But as we sit here today – And as we sit here today, we don't have anything outside of the record. What we have in the record, as is discussed in the briefing, he had a very small trial penalty here. This is not a standard case where he got a great break from a plea agreement. He didn't have a plea agreement. The gap between his range pleading guilty and his range had he been adjudicated guilty by a jury was – there was a gap of three months. It was 24 to 30 if he pleaded, 33 to 41 if he were to go to trial and be convicted. We have someone who doesn't speak Spanish very well, was, as I said, arrested in this remote area. But when he was arrested, he was with a group of more than 30 people and assaulted the immigration officer who tried to arrest him. It just – if you step back and look at the larger picture, I mean, and particularly plain error and the final discretionary factor, it's just – it's hard to be worried that there is an injustice here that he really didn't know and that it really would have made a difference on his third conviction for reentry into the United States, that this would have made a difference. It seems hard to see. I'm glad you mentioned that, the fact that it's his third Title VIII offense, Your Honor. I did want to point out, too, because I'm in that regard and the government mentions this, you know, he's been around the block, he knows what's going on. That's not – I – that's not really supported by this particular record, given the language barrier and given the nature of those two prior interactions. One was a streamline case, which you're all familiar with. It's the same day in, plead, et cetera. There's no indication he had a cannibal interpreter. And the other case out of Connecticut, he had a cannibal interpreter, but we don't have any indication from the record whether he was advised. So he probably never has been told that the government had to prove these elements. And he has the right, just like anyone in this country, to exercise his constitutional right to a jury trial. If he thinks that might be best, even if many of us would think it's a foolish choice, that's not the test. So unless there's anything further at the moment – I just wanted to ask you, how far into the country was he when he was detained? That's a good question. So there are three – the record shows three different possibilities. Nogales, which is right on the border, is what the Department of Homeland Security report says. Amado, which is 10 miles in, is what the indictment and the plea colloquy said. And then Aravaca, which is 20 miles in, is what the pre-sentence report said. So that adds to the – Yeah, but don't we have cases, though, that say, you know, the further they are from the border, the more likely it is that they know that they're in the country? In the context – this area, there's no difference in the terrain between Nogales and Aravaca. If you're in the desert, it's the same in Mexico as it is in the U.S. So that line of cases, like, for example, it's not like being in San Diego. It's the same terrain. And with that, I will reserve my remaining few seconds. Thank you, Counsel. We'll give you a minute for rebuttals. Thank you, Your Honor. I'll help take you over. All right. Take you down. Thank you. Thank you. Good morning. May it please the Court. I'm Chris Cabanillas from the District of Arizona on behalf of the United States. I'd like to explain first why there's no error at all here. I think that what's happening is the defendant, with the use of Salazar-Gonzalez, is conflating what's necessary for somebody who is going to trial and jury instructions with what does somebody need to know before they plead guilty. And this Court's cases address that first bit. This Court said in Rivera-Cias, for example, that as the defense counsel acknowledges, you do not need to charge the mens re in a 1326 found in indictment. And that's because over 50 years ago in Pena-Cabanillas, no relation, this Court said that it's a regulatory offense, there's general intent, and when you charge somebody with found in, you do not need to include any mens re on either voluntariness or that he knew he was in the United States. As a matter of fact, those arguments were raised in Rivera-Cias, and this Court said we're comfortable presuming that a defendant who's found in the United States willfully and knowingly acted in order to enter this country. Therefore, alleging that the defendant is a deported alien subsequently found in the United States without permission is sufficient to allege general intent. It's just a found-in case. It is. Okay. Yes. And, you know, this Court also in Gadinus-Rabadon, the exact same elements were the ones that the defendant was advised of when he pled guilty. And this Court said that he had enough notice with the indictment, which is exactly what happened in this case. The magistrate judge complied with this Court's decisions to a T. There is absolutely no error here. And also Salazar-Gonzalez says, to act with general intent, and that's the case the defendant relies on the most, to act with general intent, a defendant must know the facts that make his actions illegal. He did know that because he was asked to read the indictment. And to a point that Judge Collins mentioned earlier about the record, you're correct that you can consider the whole record. And I wanted to mention a few things that the defendant already knew before he even arrived at the change of plea that day. This Court may recall that the defendant was convicted of unlawful restraint after having tried to lure a 7-year-old girl off the porch of her house, and luckily, she got away. But he was deported in 2014. He came back, and he was found guilty of unlawfully being in the United States. And he admitted he was unlawfully in the United States. And my point here is he kind of gets this charge before he even gets here to the change of plea. Then he comes back in 2020. He's convicted in the District of Connecticut, and he pled guilty to the same crime. And I respectfully disagree with my buddy Lee that there is actually a record that he was given the same elements when he pled guilty to that District of Connecticut charge. And we have that in our brief, and we gave you that plea agreement that shows that. Then after three months of being he was removed, three months later, he comes back. And he then is found in Arizona. And actually, he is found north of. And it's not inconsistent, by the way. He makes a statement at the time he's arrested that he crossed in Nogales. And, you know, he's found four days later north of and near Amato. And he admits that he was found near Amato when he pled guilty in this case. Counsel, I was looking at the amended judgment, and it says he was adjudicated guilty of reentry of removed alien. That's different than found in, isn't it? Well, entry slash found in because he pled guilty to found in. And that's the one that, you know, when you look at it. But the judgment says he's adjudicated guilty of reentry of removed alien. So don't we have to go by what the judgment says? Well, if there's any dispute about that, there could be a change to the judgment, perhaps. But right now, on the record that we have, you are making the argument regarding found in. That's why I'm asking, was this a found in case? Because the judgment says reentry of removed alien. And that's a different. Isn't that a different crime? Well, entry. Reentry of removed. I'm just telling you what the judgment says. Yeah, reentry of a removed alien is this crime. I mean, it is. It is reentry, but that doesn't alter the fact that it's the same type of. Found in is a different offense. Being found in is different than reentering. But I'm sorry, I'm going by how the defendant pled, I guess. And so if the judgment is. We have to go by what he was adjudicated, what he was adjudicated guilty of. It's offense, right? I don't. Well. Where in the record do you see where. It's found in, yeah, his change of plea colloquy, and that's at ER 19 to 20. He admits that he was voluntarily present. It's also my understanding, the Court asks him after the Court verifies that he was an alien present in the United States, the Court says it's also my understanding that you were removed from the United States. Page one. Oh, ER 19 to 20, but I'm actually probably quoting from my answering brief. That's 19. ER. The indictment also says entered and was found in. Yes. You charge in the conjunctive, you can prove in the disjunctive. But the — But the — What we have is a plea. But the judgment is the official adjudication of guilt, and that's why I'm having some difficulty because. It doesn't alter, though, the mens re issue. And that's — you remember, the defendant is arguing that he did not have adequate understanding of the charge. And this Court has said that if somebody is pleading guilty to the found in, and there's no — the only difference when it would be entry is you still have voluntariness, but he admitted he was voluntarily here. And that's what I want to read to you, and it's from that part. Well, first I want to read you something. Sure. On page 21, line 5. Of the excerpt record? Uh-huh. Mr. Wong, how do you plead to the felony offense of reentry of removed alien, guilty or not guilty? And he said guilty. That's what he pled to. Your Honor, I think that's probably the use of the vernacular more than what's — But we have to go by what's in the record, counsel. But I guess I would ask, legally, there would be no difference when it comes to — Why don't you tell us why it wouldn't make a difference if the offense is reentry. Cite us some cases that talk about reentry of removed alien as opposed to found in, because they are different. Well, the cases that I'm relying on are the ones that talk about how when somebody is found in the United States as part of being guilty, you have to be here. And so when you — Those are totally separate crimes. I've done — I've done a lot of cases on this, and it's a distinct crime. Being found in is different than reentering, because you have to prove actual entry into the country for reentry. And found in, you don't have to prove that. And so there are two different cases. So do you have a case that discusses reentry of removed alien and what the mens rea is for that? Your Honor, I — I'll tell you what. I'm going to file a letter after argument, and I'll — Well, don't file a letter unless we ask you. Well, I don't want to — I'll tell you right now on what the — what the law is. So — But I think that the Godinez-Rabadon case is still — and this is — okay. So Godinez-Rabadon is one of this Court's cases. And it says, during the change-of-plea hearing, the district court twice informed Godinez to convict him under 1326a. The government would have to prove he is an alien. In other words, they're not making the distinction here. When it comes to adequate mens rea, and when you read the indictment, as long as you're looking at Godinez's statutory elements and Godinez-Rabadon, they got the same elements that this Defendant got here, and this Court said that that's enough on the face of the indictment. This Court in Sanchez-Torres also said that 1326 has two elements. So it's not attempted illegal reentry where there's specific intent, conscious desire. We're talking about found in. And I think that even when it comes to — We're not talking about found in, counsel. I'm not talking about found in. Okay, but — Maybe you are, but I'm not. Well, I'll tell you, what I think, though, Your Honor, is that it's a distinction without a legal difference here. And what I mean by that is, and this is the sentence that I'd like to read it. He asks — the judge asks the Defendant that you were voluntarily present and found here in the United States near Amado, and you didn't obtain the express consent. And remember, the argument here is not that this is reentry versus found in. The argument was he didn't know where he was in the United States. So that's the argument that I think has been raised. He had reentered the United States. That's the argument that opposing counsel is making, is making that he wasn't told that he had to know that he had reentered the United States. That's the argument that she's making. And I'm asking you, what case says that that is not an element of a reentry case? Because 1326, unless it's attempted, you don't have to have a mens rea in the indictment. You do not have to prove — you do not have to have that be part of the notice of the charge. And I — and I respectfully submit that when this Defendant pleads guilty to being voluntarily present in the United States, and he admits he returned to the United States, he did not only once, but twice he admits it because he's using this underlying conduct to admit his violation of supervised release, that the mens rea, that there doesn't have to be any in this indictment in order for the Defendant to have notice of the charge. This is different than Salazar-Gonzalez. Salazar-Gonzalez is a jury instruction case. The judge didn't give any mens rea before the court found — before the jury convicted him. This — we don't read jury instructions to a Defendant when he pleads guilty. We just have to know whether or not the indictment — Sotomayor, which lists the elements provide the checklist that you have to use when you're determining in a plea colloquy whether there's a sufficient factual basis, and everything has to be covered. But the voluntary and what he did here, you were — he covered the mens rea, the magistrate judge, in the factual basis. So before this Defendant was — That's a better argument. In convicted. Before this Defendant was convicted, he had that. He admitted that. And that's what I was — I was getting at. He had already said, you're voluntarily present and found here in the United States near Amado, and that you were — you didn't obtain consent before returning. And then he admits again for purposes of the S.R. violation. I was — you're voluntary. He's saying he's voluntarily present in the United States. Or he's saying admitting to being found in the United States. So he does it twice. And I see I'm getting in the red here, but I wanted to see if I could touch on substantial rights. No, counsel. Okay. No problem. You've exceeded your time. We'd ask this Court to affirm, because there was no error, there was no plain error, and there certainly was no violation of substantial rights. All right. Thank you. Thank you. Excuse me. Thank you, Your Honor. Exactly right, Judge Rawlinson. And I just want to point the Court to the discussion in Salazar-Gonzalez at page 857, which goes through the case law, including case law referenced by counsel for the government, and explains why that's not relevant in the context, including in this context. And the Rivera-Cias case, which the government just mentioned, it's mentioned there. And also, as Your Honor, Judge Rawlinson pointed out, that case was a — it was a motion — it was an appeal of a denial of a motion to dismiss the indictment, and it was a found-in case. Here, exactly — You conceded in your opening brief that this is a found-in case. You say at the bottom of page 16, Juan Diego was pleading guilty to the charge of reentry of removed alien, 1326A, under its found-in clause. This is a general-intent crime. And then you went to Salazar-Gonzalez to say that even in the context of a found-in, there still has to be this knowledge requirement. But you presented this as a found-in case, and so I don't know that you get your shift towards this now. Well, I apologize for that, Your Honor, because it is clear that the indictment he was — he was convicted under an indictment that was entered and was found in. And — Well, if he was — so is it, in your view now, is it a legal reentry or is it a found-in? It was never drilled down. I went back and looked last night, and all of the references were just to 1326A in general. And so I do — I think the answer is in Salazar-Gonzalez at 857. I'm somewhat surprised that the government is arguing no error here. And I would just finally like to ask the Court to vacate and remember that to prevail, we don't need a showing that it was more likely than not it would have changed his decision, just that it might have changed his decision had he been properly advised. Thank you. Thank you. The case just argued is submitted for decision by the Court.
judges: RAWLINSON, COLLINS, Fitzwater